IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW J. LEVY and <br> JASON D. LEVY, <br> <br> Plaintiffs, <br> <br> vs. <br> <br> WEST COAST LIFE INSURANCE COMPANY, <br> <br> Defendant. | Case No. 21 C 4062 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Matthew J. Levy and Jason D. Levy have filed suit against West Coast Life Insurance Company for breach of contract; they also seek a declaratory judgment. West Coast Life has moved to dismiss for failure to state a claim. For the reasons stated below, the Court dismisses the declaratory judgment claim but denies the motion with respect to the breach of contract claim.

### Background

Matthew and Jason Levy are the sons of Benita Levy and the co-beneficiaries of her West Coast Life Insurance policy. Benita Levy purchased a life insurance policy from West Coast Life in 2002 and made timely payments on the policy until 2018, when her mental health declined.

On December 18, 2018, West Coast Life mailed a First Notice of Payment Due (the Notice) to Benita Levy for the $1,400 annual payment on the policy. The Notice contained a due date of 01/09/2019 and stated that if payment was not received by

02/09/2019, "your policy will terminate and lapse." Compl., Ex. B. The back of the notice contained further information about nonpayment, which the Court will discuss momentarily. The Levys allege that "West Coast Life changed the address to which it sent the 2018 'First Notice of Payment Due' (which was the first time West Coast Life sent a notice to this address), not because of a request by Ms. Levy, but because of West Coast Life's 'practice to perform monthly address scrubs through a service provided by the U.S. Postal Service.'" Compl. ¶ 26. The address where West Coast Life mailed the notice was, the Levys allege, "a different address than provided for by the Policy." Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 11. The Notice contained information about a website and mailing address where payments could be made.

The premium payment was not made by the due date or within the grace period. Benita Levy died on June 28, 2019. West Coast Life refused to pay the policy's death benefit to Matthew and Jason Levy because it declared the policy forfeited and lapsed due to non-payment. The Levys then filed this suit for breach of contract and for a declaratory judgment that West Coast Life's failure to pay the death benefit was a breach of the policy. As indicated earlier, West Coast Life has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that the policy lapsed due to non-payment before Benita Levy's death. West Coast Life also contends that the declaratory relief claim should be dismissed because it is duplicative of the breach of contract claim.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible on its face, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). In considering a Rule 12(b)(6) motion, a court may consider the complaint, the documents attached to the complaint, and additional facts set forth in the plaintiff's brief, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

**A.     Breach of contract claim**

The Illinois Insurance Code provides that "[n]o life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment . . . unless a written or printed notice" that meets several requirements has been sent to the insured. 215 ILCS 5/234(1). Specifically, the statute says that the notice must state the amount of premium due; shall be addressed and mailed to the insured "at his last post office address"; shall be mailed "at least fifteen days and not more than forty-five days prior to the day when the [premium is due and payable, before the beginning of the period of grace"; and shall state that unless the premium is paid "the policy and all payments thereon will become forfeited and void, except as to the right to the surrender value or paid-up policy as provided for by the policy." *Id.*

The Levys contend that West Coast Life failed to send a notice that conformed to the statutory requirements, and thus it could not properly terminate the policy. West Coast Life contends that its Notice complied with the statute.

3

The Levys argue that the Notice was deficient because it failed to meet four statutory requirements: 1) providing proper notice that the policy would be terminated; 2) providing notice of where the premium was due and to whom it was payable; 3) mailing within the statutorily prescribed timeframe; and 4) mailing to the insured's last known post office address. Illinois courts have held that the insurance company has the burden of proving that a notice complied with statutory requirements. *Cullen v. N. Am. Co.*, 176 Ill. App. 3d 643, 646, 531 N.E.2d 390, 392 (1988).

1. **Notice regarding consequences of nonpayment**

The Levys contend that the Notice sent by West Coast Life did not meet the statutory requirements for providing notice of the consequences of nonpayment. As just discussed, section 234 requires the notice to "state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void." 215 ILCS 5/234(1). As another judge in this district has held, "[i]t is clear from the use of the word 'shall' in Section 5/234 that it is mandatory for an insurer to give the required notice in order to validly declare an insurance policy forfeited or lapsed . . . . A general statement about the Policy lapsing will not suffice." *Wegrzyn v. Jackson Nat. Life Ins. Co.*, No. 10 C 2140, 2011 WL 267510, at *3 (N.D. Ill. July 8, 2011).

The Notice, which was on the front and back of a single page, contains three statements regarding the consequences of failure to timely pay. On the front side of the page, the Notice states, "If we do not receive your payment by 02/09/2019, your policy will terminate and lapse." Compl., Ex. B at 1. Just below that, the following statement appears in bold type: "**\* \* \* See the reverse side for important notices. \* \* \***" *Id.* On

4

the back side of the page, the first sentence reads: "Unless we receive your payment as requested in this notice by the stated due date or within the contractually specified grace period thereafter, your policy will terminate and lapse, at which time the policy and all payments thereon will become forfeited and void, except as to the right, if any, to a surrender value, paid-up policy, or non-forfeiture benefit as may be provided for by the policy." *Id.* at 2. Further down the page, the following statement appears: "If a payment is not made within the grace period as described in the policy, your policy will terminate and lapse unless otherwise provided." *Id.*

The statement on the back page of the Notice contains the statutory language that the consequence of nonpayment is that " the policy and all payments thereon will become forfeited and void." *Id.* The Levys argue, however, that the presence of the two other statements that upon nonpayment the policy "will terminate and lapse" make the notice confusing and ambiguous and noncompliant with the statute. They cite to a decision by the undersigned judge in which language regarding "terminat[ion]" was ruled insufficient to clearly convey the consequences of nonpayment and thus did not comply with the statute. *Hartwick v. AXA Equitable Life Ins. Co.*, No. 19 C 8305, 2020 WL 7698367, at *2 (N.D. Ill. Dec. 27, 2020). In *Hartwick*, however, the notice did not include the required language stating that the policy would become "forfeited and void." The Court's holding was that the notice's bare reference to "termination," along with other language that confusingly described what would happen upon nonpayment, rendered it insufficient. Here, however, West Coast Life's notice *did* include the statutory language.

In addition, the other language in the Notice does not contradict the statutory

5

language.  A statement that the policy will "terminate and lapse" upon nonpayment in no way undercuts or contradicts the statement that it will become "forfeited and void."  Nor does the fact that the statutory "forfeited and void" language appears on the back of the page render the Notice noncompliant.  There is a bolded and starred statement on the front of the page telling the reader that "important notices" appear on the back, and the "forfeited and void" language is in the first sentence on the back of the notice.  Assuming for purposes of discussion that a notice containing the required language might be rendered noncompliant if that language is buried or rendered confusing by other statements, that is not the case here.  Reading the Notice as a whole, the consequences of nonpayment are sufficiently conveyed.  Cf. *Am. Bankers Ins. Co. of Fl. v. Shockley*, 3 F.4th 322, 328 (7th Cir. 2021) ("We interpret the contract as a whole, viewing each part in light of the others." (internal quotation marks omitted)).  The language cited by the Levys does not overshadow the statutory language, as the Notice conveys a consistent message about what will happen to the policy if the premium payment is not made.

    This case is also nothing like *Wegrzyn v. Jackson National Life Insurance Co.*, which the Levys cite.  In that case, the court ruled that a notice that stated only that failure to pay would "cause your life insurance policy to lapse" ran afoul of section 234's notice requirement because it was "unclear . . . whether it is conveyed that the Policy would become forfeited and void."  *Wegrzyn*, 2011 WL 267510, at *3.  In *Wegrzyn*, however, the notice did not contain the statutory "forfeited and void" language at all.  The opposite is true here.

    The Levys also contend that the Notice is ambiguous because there is

6

"uncertainty as to whether 'terminate and lapse' equals 'forfeited and void,' and whether anything further happens in between these two events . . . ." Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 7. The Court disagrees. "A provision is ambiguous 'only when it is susceptible to more than one reasonable interpretation.'" *Am. Bankers Ins.*, 3 F.4th at 328 (citing *Trotter v. Harleysville Ins. Co.*, 821 F.3d 916, 918 (7th Cir. 2016)). The phrase "at which time" in the longer phrase "terminate and lapse, at which time the policy and all payments thereon will become forfeited and void," plainly reflects that the events happen simultaneously. The Court concludes that there is not more than one reasonable interpretation, and thus the Notice is not ambiguous on this basis.

Finally, the Levys argue that the difference in notice language between the 2017 and 2018 payment notices creates an ambiguity and renders the 2018 Notice noncompliant. That's tantamount to saying that an insurer can never properly change the language in its notices to policyholders, not even to improve it. This is not a tenable proposition. That aside, the statute requires a notice to be sent between fifteen and forty-five days prior to the date the payment is due. 215 ILCS 5/234(1). For this reason, the contents of a notice from a prior year are effectively irrelevant.

In sum, the Levys' contention that West Coast Life violated the statutory requirement regarding notice of the consequences of nonpayment lacks merit.

### 2. Notice of payment information

The Levys next assert that the Notice did not properly address where the premium was due and did not properly identify to whom payment should be made. Section 234 requires the insurer's notice to state "the amount of such premium . . . the place where it shall be paid and the person to whom the same is payable." 215 ILCS

5/234(1).

The Levys do not plausibly state a claim that the Notice did not include the required information on where and to whom to make the payments. The Notice states in three places on the front page that a payment may be made online, and it lists the web address where the payment can be made. Compl., Ex. B at 1. The Notice also states on the front page, "Or simply complete the payment stub below and return it with your check in the envelope provided." *Id.* The bottom portion of the front page says, "Make Check Payable To: West Coast Life Insurance Company," and it lists the mailing address where the check may be sent. *Id.* This satisfies the statutory requirement of identifying the "place where it shall be paid and the person to whom the same is payable."

The Levys also contend that the Notice was insufficient because it did not specify authorized agents who may accept payment on behalf of the company. Section 234 requires the Notice to "state that unless such premium or other sums due shall be paid to the company *or* its agents the policy and all payments thereon will become forfeited and void . . . ." 215 ILCS 5/234 (emphasis added). "Or" quite plainly does not mean "and." The Notice provided information on how to make a payment to the company itself; it was not required to also list an authorized agent. Further, Illinois courts have found notice language that does not contain any reference to an agent to comply to Section 234. *See, e.g., Time Ins. Co. v. Vick*, 250 Ill. App. 3d 465, 474–75, 620 N.E.2d 1309, 1316–17 (1993).

3. **When the notice was sent**

Section 234 requires that the notice "shall have been duly addressed and mailed

. . . at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace . . . ." 215 ILCA 5/234(1). The Notice was mailed on December 20, 2018. It contained a "due date" of January 9, 2019 and stated, "If we do not receive your payment by 02/09/2019, your policy will terminate and lapse." Compl., Ex. B at 1. West Coast Life contends that Notice was sent within the statutory timeframe because the January due date was twenty days after the letter was sent. The Levys contend that the Notice was not sent within the prescribed timeframe because the February date was fifty-one days after the letter was sent, and the Notice did not specify that the February date already included the policy's required thirty-one-day grace period.

The Levys do not state a plausible claim that West Coast Life ran afoul of the statutory timeframe for sending notice that a premium payment is due. West Coast Life complied with the statutory requirement to mail notice "at least fifteen days . . . prior to the day when the [premium] is due and payable" because it sent out the notice twenty days before the due date of January 9, 2019 listed on the notice. January 9 *was* the date the premium was "due and payable, before the beginning of the period of grace," which did not run out until February 9. The January due date, not the February grace period date, is the relevant date for determining the timeliness of the notice.

The Levys' argument that the due date was ambiguous is not supported by the text of the Notice. The January due date appears prominently in two places on the front page of the Notice and, both times, is listed as "Due Date." Compl., Ex. B at 1. The statement that the policy will terminate and lapse if not received by February 9 is in no way inconsistent with this; February 9 was not the due date (and nothing in the Notice

9

suggested it was) but instead was the end of the grace period, which is when, under both the policy and the law, the policy would become forfeited and void if no payment was made.

In sum, the Levys have not plausibly alleged that West Coast Life failed to comply with Section 234's requirements regarding the timing of notice.

### 4. Where the notice was sent

Section 234 requires that the insurer's notice "shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured. . . at his last known post office address . . . ."  215 ILCS 5/234(1).  According to the Levys' complaint, the Notice was mailed to Benita Levy at a new address, not the address identified in her policy.  According to the complaint, Benita Levy had not changed her address with West Coast Life.  The Levys allege in their complaint that the company obtained the new address via "monthly address scrubs through a service provided by the U.S. Postal Service."  Compl. ¶ 26.

The Court cannot determine, based on the complaint alone, that the address where West Coast Life mailed the 2018 Notice was Benita Levy's "last known post office address," within the meaning of section 234.  The complaint refers to a "monthly address scrub," but it is not clear what that is and whether the address that was produced by this " scrub" constituted Benita Levy's last known post office address within the meaning of the statute.  The Court concludes that the Levys have plausibly stated a claim that the Notice did not comply with Section 234's requirements in this regard, which if so would mean that the policy had not properly terminated at the time of Benita Levy's death.

For this reason, the Court declines to dismiss Count 2.

**B.     Declaratory judgment claim**

The Court dismisses the declaratory judgment claim in Count 1 because it is duplicative of the breach of contract claim in Count 2.  *See, e.g.*, *Tenneco Inc., v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("when one party to a contract seeks a declaration of the contract's meaning, another party's counterclaim seeking to enforce the contract is 'repetitious and unnecessary.'")  "It is well settled that the federal courts have the discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."  *Tempco Elec. Heater Co. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987).

In their declaratory judgment claim, the Levys seek a declaration that West Coast Life failed to comply with Section 234 and failed to properly terminate the policy, that the policy was in effect at the time of Benita Levy's death, that Matthew and Jason Levy are entitled to the death benefit, and that West Coast Life was obligated to pay the benefit but refused and breached the policy.  The claim includes nothing that is not addressed more directly by adjudicating the breach of contract claim.  The Court therefore dismisses the declaratory judgment claim as duplicative of the breach of contract claim.

## Conclusion

For the foregoing reasons, the Court dismisses Count 1 of plaintiffs' complaint but denies defendant's motion to dismiss as to Count 2 [dkt. no. 9].

Date:  November 6, 2021

_____
MATTHEW F. KENNELLY
United States District Judge